United States Courts
Southern District of Texas
FILED

OCT 1 5 2018

David J. Bradley, Clerk of Court

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| H.C. JEFFRIES TOWER | § | CASE NO. 17-35027-H5-11 |
| COMPANY, INC. | § | (Chapter 11) |
|     Debtor | § | |
| | § | |
| FORD STEEL, LLC. | § | CASE NO. 17-35028 |
|     Debtor | § | (Chapter 11) |
| | § | JUDGE RODRIGUEZ |
| | § | |
| | § | JOINTLY ADMINISTERED UNDER |
| | § | CASE NO. 17-35027-H5-11 |

## Debtor H.C. Jeffries Tower Company, Inc.'s
## Second Amended Plan of Reorganization

**H.C. JEFFRIES TOWER COMPANY, INC.,** Debtor herein, files this Second Amended Plan of Reorganization.

## Table of Contents

Topic     Page

Definitions...................................................................................................................2

Classes of Creditors and Specific Treatment of Claims .................................................5

Specification of All Claims Impaired and Not Impaired under the Plan.......................11

Modification of Plan ...................................................................................................11

Means for Implementing and Effectuating the Plan ....................................................11

Reservation of Rights..................................................................................................11

Rejection of Executory Contracts ........................................................................................12

Bar Dates for Filing Proofs of Claim ...................................................................................12

Transfer of Claims ................................................................................................................13

Specific Consideration in Voting..........................................................................................13

Effect of Confirmation..........................................................................................................14

Jurisdiction of the Court........................................................................................................15

Miscellaneous Provisions......................................................................................................16

Interim Operations ................................................................................................................17

**I.**

**Definitions**

The following terms, when used in the Plan, shall unless the context otherwise requires, have the following meanings, respectively:

1.      "Allowed Amount" shall mean the dollar amount of a claim approved and allowed by final order of the Bankruptcy Court or through the filing of a proof of claim which has not been disallowed by the Bankruptcy Court.

2.      "Bankruptcy Code" is the Bankruptcy Code of 1978 as contained in Title 11 U.S.C. Section 101 et seq. and amendments thereto.

3.      "Bar Date" is the deadline previously established by the court, after which any proof of claim filed will have no effect on this Plan and no right to participate with other creditors under the Plan.   Pursuant to the Notice of Meeting of Creditors promulgated by the Court, the bar date occurs 90 days after the first date set for the meeting of creditors.   In the instant case, the meeting of creditors in the Chapter 11 Proceeding was held on October 26, 2017, and the bar date

is **January 24, 2018 for creditors and April 2, 2018 for governmental entities.**

      4.      "Claim" shall mean a right to payment from the Debtor's Estate, which is evidenced by a timely filed Proof of Claim which is allowed by the Court, or if a Proof of Claim is not filed by the creditor, a right which otherwise appears in the Debtors' bankruptcy schedules and (i) is not listed as disputed, contingent or unliquidated, (ii) has not been resolved by Final Order of the Court in this reorganization case or, (iii) which has been otherwise satisfied.

      5.      "Class" shall mean any class into which Claims are classified pursuant to Section II.

      6.      "Confirmation" shall mean the entry by the Bankruptcy Court of an order confirming the plan in accordance with Chapter 11 provisions of the Bankruptcy Code.

      7.      "Confirmation Date" shall mean the date set by the Court pursuant to §1128 of the Bankruptcy Code for hearing on confirming the Plan on which the Court determines that the Plan meets the requirements of Chapter 11 of the Bankruptcy Code and is entitled to confirmation.

      8.      "Consummation" shall mean the date upon which the Debtor makes its first payment to creditor(s) under a confirmed plan.

      9.      "Creditors" shall mean all creditors of the Debtors holding claims for debts, liabilities, demands or claims of any character whatsoever, as defined in §101(4) of the Bankruptcy Code.

      10.      "Creditors Committee" shall mean that Creditors Committee appointed by order of the Court, the members thereof and any successor members.   In the instant proceeding, the U.S. Trustee's office determined that it was unable to form a Creditors Committee.

      11.      "Court" shall mean the United States Bankruptcy Court for the Southern District of Texas, Houston Division, presiding over the reorganization case, or, if necessary, the United States

District Court for said District and Division having original jurisdiction over the reorganization case.

12.    "Debtor" shall mean H.C. Jeffries Tower Company, Inc.

13.    "Disbursing Agent" shall mean Herbert C. Jeffries.

14.    "Disclosure Statement" shall mean the Debtor's Disclosure Statement.

15.    "Discharge" shall mean that completion of the Plan is intended to, will, and does fully discharge the Debtor as provided in Section 1141(d) of the Bankruptcy Code and the Plan does not provide for exceptions to discharge under 1141(d)(3), except as to any post-petition claims.   The Debtor shall not receive a discharge as it is a corporation.

16.    "Effective Date" shall mean the thirtieth day following the date of the order confirming the plan, if no notice of appeal is timely filed, or if a notice of appeal is filed, during which time no motion for stay pending appeal is granted or supersedeas bond is approved and filed; but, in the event a stay is granted or supersedeas bond is approved and filed, then it shall be the date on which the order confirming plan is a final order.

17.    "Final Decree" shall mean the order of the Court entered after all payments and distributions of monies called for under the Plan have been made (i) discharging the Trustee, if any, and canceling his bond, (ii) making provision by way of injunction or otherwise as may be equitable, and (iii) closing the reorganization case.

18.    "Final Order" shall mean an order of the Court which, not having been reversed, modified or amended and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become conclusive of all matters adjudicated thereby and is in full force and effect.

19.    "Lien" shall mean mortgage, pledge, judgment lien, security interest, charging order, or other charge or encumbrance on property which is effective under applicable law as of the date of the commencement of the reorganization case.

20.    "Plan" shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

22.    "Pro Rata Share" shall mean the amount which is the result of multiplying the monies available for distribution to a named class of creditors by that fraction in which the numerator is the allowed amount of a particular claim in the named class and the denominator is the total of the amounts of all the claims in the named class.

23.    "Reorganized Debtor" shall mean the new company created on the effective date of the Plan.

24.    "Secured Claim" shall mean the claim of any creditor secured by liens on property, which liens are valid, perfected, and enforceable under applicable law, and are not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and are duly established in this case, to the extent of the value of the security, as determined in accordance with §506 of the Bankruptcy Code.

25.    "Unsecured Claims" shall mean all business claimants or other claimants of any nature, holding claims for unsecured debts, liabilities, demands or claims of any character whatsoever.

26.    "Unsecured Creditor" shall mean the holder of an unsecured claim.

## II.
## Classes of Creditors
## and Specific Treatment of Claims

The Plan of Reorganization proposes the continuation of the Debtor's business utilizing the profits to fund the plan over a 5 to 10 year period.

The Debtor's Plan of Reorganization will provide for classification of creditors in accordance with the United States Bankruptcy Code.

**Class 1- Administrative Expenses - Legal Fees**. Class 1 is unimpaired. Class 1 are Claims entitled to priority by Section 507(a)(2) of the Bankruptcy Code and will consist of fees and expenses incurred by the Court appointed Counsel. These fees are incurred prior to the effective date of the Plan, as the same are finally approved and allowed by final order of the Court, and any other expenses incurred during the course of the Chapter 11 proceeding that have not yet been paid. The members of this class are Cooper & Scully, PC, Counsel for the Debtor.

Pursuant to 11 U.S.C. §503(b)(1)(D), the Internal Revenue Service is not required to file an application for the allowance of administrative tax expenses.

All claims in this class shall be paid in cash and in full in such amounts as may be allowed and approved by the Court on the effective date or after such claims are finally allowed, whichever is later, by the Debtor to the extent of available funds, or such claims may be paid in accordance with any agreement or waiver. In either event, claims in this class shall be paid in full within the one (1) year period of the initial plan. The anticipated total expenses to be paid in this class are anticipated to be $70,000 to $75,000.00.

**Class 2 - The United States Trustee**. Class 2 is unimpaired and consists of the post-confirmation claim of the office of the United States Trustee for its fees from the date of

confirmation until the Chapter 11 file is closed by the Bankruptcy Clerk.   These fees are based on the amount of disbursements made by the Debtor and are paid on a quarterly basis.   The reorganized Debtor shall be responsible for timely payment of the United States Trustee quarterly fees incurred pursuant to 28 U.S.C. §1930(a)(6).   Any fees due as of the date of confirmation of the plan will be paid in full on the effective date of the plan.   After confirmation, the reorganized Debtor shall pay United States Trustee quarterly fees as they accrue until this case is closed by the Court.   The Debtor shall file with the Court and serve on the United States Trustee a quarterly financial report for each quarter (or portion thereof) that the case remains open in a format prescribed by the United States Trustee.

All pre-confirmation quarterly fees shall be paid by the effective date of the Plan.

**Class 3 - Priority Claim of the Internal Revenue Service.**   Class 3 is impaired and consists of the priority claim of the Internal Revenue Service in the amount of $900,630.77, with interest at the rate of 5%.   This claim will be paid in equal monthly installments of $24,479.34 within five years from the date of filing[1].   The first payment shall be made on the 15th day of the first full month of the first full quarter following the effective date of the plan and continue until paid in full.   The first payment is estimated to be on January 15, 2019.

If the reorganized debtor defaults on the plan payments due to the IRS, the outstanding balance is immediately due and payable.   Payments shall be for the entire amount owed to the IRS under the plan.   The IRS may collect these unpaid tax liabilities through the administrative collection provisions of Title 26 of the Internal Revenue Code.

---

[1]  The five year period begins on the filing date although the payments do not begin until after the effective date. This payment amount is presuming payments begin in July of 2018.   If the actual payments begin after July of 2018, the amount of the payments will be adjusted upwards to ensure that all payments in this Class are made within 5 years of the filing date.

**Class 4A - Secured Claims of the Texas Workforce Commission**.   Class 4A is impaired and consists of the secured claim of the Texas Workforce Commission in the total amount of $3,035.11 with interest at the rate of 6%.   The lump sum payment shall be made on the 15th day of the first full month of the first full quarter following the effective date of the plan.   The first full month is estimated to be January, 2019.   In the event that the payment is later than September of 2018, additional interest at the rate of 6% will be included in the payment.    Upon confirmation, Counsel for the Texas Workforce Commission shall calculate and inform the Debtor of the exact amount of the payment.

Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, these provisions will govern the treatment of the claims of the Texas Comptroller of Public Accounts and Texas Workforce Commission, (collectively the "Texas Taxing Authorities"): (1) nothing provided in the Plan or this Confirmation Order shall affect or impair any statutory or common law setoff rights of the Texas Taxing Authorities in accordance with 11 U.S.C. § 553; (2) nothing provided in the Plan or this Confirmation Order shall affect or impair any rights of the Texas Taxing Authorities to pursue any non-debtor third parties for tax debts or claims; (3) nothing provided in the Plan or this Confirmation Order shall be construed to preclude the payment of interest on the Texas Taxing Authorities' administrative expense tax claims; (4) to the extent that interest is payable with respect to any administrative expense, priority or secured tax claim of the Texas Taxing Authorities, the interest rate shall be 5.5% per annum; and (5) the Texas Taxing Authorities are not required to file a motion or application for payment of administrative expense claims; the Texas Taxing Authorities' administrative expense claims are allowed upon filing, subject to objection on substantive grounds.

A failure by the Debtor or Reorganized Debtor to make a plan payment to an agency of the State of Texas shall be an Event of Default.   If the Debtor or Reorganized Debtor fails to cure an Event of Default as to an agency of the State of Texas within ten (10) days after service of a written notice of default, then that agency may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies available under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in this court.   The Debtor and/or Reorganized Debtor can receive up to three (3) notices of default, however, the third default cannot be cured.

The terms set forth herein shall govern the treatment of the claims of the Texas Taxing Authorities notwithstanding anything to the contrary in the Plan or Confirmation Order".

**Class 4B - Secured Claim of Montgomery County**.   Class 4B is impaired and consists of the secured claim of Montgomery County in the amount of $4,240.08 as of October 31, 2018, plus interest at the rate of 12%.   This claim will be paid in equal quarterly installments of $1,164.70 over a one year period.   The first payment shall be made on the 15th day of the third full month of the first full quarter following the effective date of the plan and continue until paid in full.

Upon confirmation, Counsel for Montgomery County shall calculate and inform the Debtor of the exact amount of the payments.

The claimant in this class shall retain all statutory liens on the Debtor's property. Post-petition secured ad valorem taxes will be paid in the ordinary course of business and failure to do so shall result in a default under the terms of the confirmed Plan.

Default of the Plan shall be defined as the failure of the proponent of the plan to make

payments or perform any action required to be made under the terms of the confirmed plan.

In the event of a default, there will be full reinstatement of the administrative collection powers and rights of this ad valorem Taxing Authority as they existed prior to the filing of the bankruptcy petition in this case, including, but not limited to, the assessment of taxes, the filing of Notices of Tax Liens and the powers of levy, seizure and sale.

**Class 4C - Secured Claim of the Texas Comptroller of Public Accounts**.    Class 4C is impaired and consists of the secured claim of the Texas Comptroller of Public Accounts in the amount of $23,643.51 with interest at the rate of 5.5%.    This claim will be paid in equal quarterly installments of $6,088.44 over a one year period.    The first payment shall be made on the 15th day of the first full month of the first full quarter following the effective date of the plan and continue until paid in full.

Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, these provisions will govern the treatment of the claims of the Texas Comptroller of Public Accounts and Texas Workforce Commission, (collectively the "Texas Taxing Authorities"): (1) nothing provided in the Plan or this Confirmation Order shall affect or impair any statutory or common law setoff rights of the Texas Taxing Authorities in accordance with 11 U.S.C. § 553; (2) nothing provided in the Plan or this Confirmation Order shall affect or impair any rights of the Texas Taxing Authorities to pursue any non-debtor third parties for tax debts or claims; (3) nothing provided in the Plan or this Confirmation Order shall be construed to preclude the payment of interest on the Texas Taxing Authorities' administrative expense tax claims; (4) to the extent that interest is payable with respect to any administrative expense, priority or secured tax claim of the Texas Taxing Authorities, the interest rate shall be 5.5% per annum; and (5) the Texas Taxing

Authorities are not required to file a motion or application for payment of administrative expense claims; the Texas Taxing Authorities' administrative expense claims are allowed upon filing, subject to objection on substantive grounds.

A failure by the Debtor or Reorganized Debtor to make a plan payment to an agency of the State of Texas shall be an Event of Default.   If the Debtor or Reorganized Debtor fails to cure an Event of Default as to an agency of the State of Texas within ten (10) days after service of a written notice of default, then that agency may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies available under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in this court.   The Debtor and/or Reorganized Debtor can receive up to three (3) notices of default, however, the third default cannot be cured.

The terms set forth herein shall govern the treatment of the claims of the Texas Taxing Authorities notwithstanding anything to the contrary in the Plan or Confirmation Order".

**Class 4D - Secured Claim of The Bank & Trust of Bryan/College Station.**    Class 4D is impaired. It consists of the Secured Claim of The Bank & Trust of Bryan/College Station (the "Bank") in the allowed amount of $678,078.16 as of the date of filing with interest at the rate of 8% over ten (10) years. The Bank retains a blanket first lien on all Debtor's personal property. Such personal property consists of all Debtor's fixtures, furniture, equipment, inventory, accounts, chattel paper, general intangibles, whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind related to any of the foregoing; and all proceeds relating to any of the foregoing (including insurance, general intangibles, and other account proceeds). The Bank also retains a blanket first lien on all the jointly-administered Debtor Ford Steel, LLC's furniture, fixtures,

equipment, inventory, accounts, chattel paper, general intangibles, whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind related to any of the foregoing; and all proceeds relating to any of the foregoing (including insurance, general intangibles, and other account proceeds).   The Bank also retains a second lien on the jointly-administered Debtor Ford Steel, LLC's real estate with improvements.   The Bank's liens against the Debtor's personal property and the jointly-administered debtor Ford Steel, LLC's real and personal property shall be released only upon the irrevocable payment in full of the Class 4C Allowed Secured Claim as described in the jointly-administered Debtor's plan of reorganization.

The Bank's claim shall be treated in accordance with Class 4C of the jointly-administered debtor Ford Steel, LLC's plan or reorganization. However, should the jointly-administered debtor Ford Steel, LLC default in payments to the Bank under that debtor's plan of reorganization, the injunction under this Debtor's Plan and the injunction under the jointly-administered debtor's plan of reorganization shall lift to allow the Bank to foreclose on its collateral owned by this Debtor and the jointly-administered debtor under applicable state law.   However, the Bank shall foreclose on its collateral held by Ford Steel first, applying the proceeds of the sale of that collateral to the Bank's claim.   If the Bank's claim is not fully satisfied from the proceeds of the sale of the Ford Steel collateral, the Bank may then proceed to forclose on its collateral owned by this Debtor unless other payment arrangements, acceptable to Bank, are offered by this Debtor.

Until such time as the Bank's claim is paid in full, the Debtor shall provide the Bank by the tenth day of each month, through its counsel, with monthly balance sheets, income statements, cash flow statements, and reports of the Debtor's Accounts Receivable as of the last day of the

preceding month. Such accounts receivable reports shall contain the entity owing the money to the Debtor, the amount each entity owes the Debtor, and contact information including telephone number and mailing address of each entity.

**Class 4E - Secured Claim of The Internal Revenue Service.**   Class 4E is impaired and consists of the secured claim of the Internal Revenue Service ("IRS") amount of $777,929.16.

This claim will be paid in equal monthly installments of $21,144.28 with interest at the rate of 5% within five years from the date of filing.   The first payment shall be made on the 15th day of the first full month of the first full quarter following the effective date of the plan and continue until paid in full, a period of 43 months.   The IRS shall retain its liens on the Debtor's personal property.

If the reorganized debtor defaults on the plan payments due to the IRS, the outstanding balance is immediately due and payable.   Payments shall be for the entire amount owed to the IRS under the plan.   The IRS may collect these unpaid tax liabilities through the administrative collection provisions under Title 26 of the Internal Revenue Code.

**Class 5 - Unsecured Claims under $1,000.01.**   Class 5 is impaired and consists of the unsecured claims under $1,000.01.   There are 2 claims in this class for a total of $1,607.43.   The claimants in this class are:

| | | |
|---|---|---|
| 1. | NDLChicago | $ 665.88 |
| 2. | Nott, Ltd. | 941.55 |
| Total | | $1,607.43 |

These claims shall be paid in full on the first full month of the first fill quarter following the effective date of the Plan.

Any member of Class 6 who agrees to reduce their claim to $1,000.00 may elect to be

treated in Class 5 of the Plan.   The election to accept treatment in Class 5 **shall be made in writing on the ballot.**   The election to be treated in Class 5 by a Class 6 creditor is an election to accept $1,000.00 in **full satisfaction of their entire claim.**

**Class 6 - Unsecured Claims over $1,000.00.**   Class 6 is impaired and consists of the unsecured claims over $1,000.00.   These claims total approximately $1,278,569.25.   These claims shall be paid 100% of their claims in equal quarterly installments over a 5 year period. The first payment shall be made on the 15th day of the third full month of the first full quarter following the effective date of the plan.   The anticipated quarterly installment to these creditors is in the amount of $63,928.46.

Any member of Class 6 who agrees to reduce their claim to $1,000.00 may elect to be treated in Class 5 of the Plan.   The election to accept treatment in Class 5 **shall be made in writing on the ballot.**   The election to be treated in Class 5 by a Class 6 creditor is an election to accept $1,000.00 in **full satisfaction of their entire claim.**

**Class 7 - Equity Security Holders.**   Class 7 is impaired and consists of the equity security holder of the Debtor, Herbert Jeffries.   During the term of the plan payments under the confirmed plan, Herbert Jeffries shall operate the Debtor and insure that all payments under the plan are paid.   As the Debtor is paying 100% to the unsecured creditors, he will retain is 100% interest in the Reorganized Debtor.

## III.

## Specification of All Claims Impaired and Not Impaired under the Plan

Classes 1 & 2 are unimpaired under the Plan.   Classes 3, 4A, 4B, 4C, 4D, 4 E, 5, 6 & 7 are

impaired under the Plan.

## IV.
## Modification of Plan

The Plan may be amended or modified by the Debtor with the approval of the Court after notice and hearing.   If the Court finds after hearing on notice to any committee appointed under the Code and any other person designated by the Court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the Plan.

## V.
## Means for Implementing and Effectuating the Plan

Implementation of the Plan requires entry of an order by the Bankruptcy Court confirming the Plan.   The Plan is to be implemented, if accepted and approved by the Bankruptcy Court, in its entire form.     The Plan of Reorganization proposes to continue the Debtor's operations and utilize the profits to fund the Classes over a 5 - 10 year period.

## VI.
## Reservation of Rights

Neither the filing of the Plan, nor any statement or provision contained herein, nor the taking by the Debtor or any creditor of any action with respect to the Plan shall (i) be or be deemed to be an admission against interest and (ii) until the effective date, be deemed to be a waiver of any rights which the Debtors might have against a creditor, and until the effective date all such rights are expressly and specifically reserved.   In the event that the effective date does not occur, neither the Plan nor any statement contained therein may be used or relied upon in any manner in any suit,

action, proceeding or controversy within or outside of the reorganization case.

## VII.
## Rejection of Executory Contracts

The Debtor rejects all unassumed leases and executory contracts except for the lease agreement with Ford Steel which will be assumed.

## VIII.
## Bar Dates for Filing Proofs of Claim

Any creditor desiring to receive a distribution under the provisions of this Plan, and whose claim is not evidenced by a court order or set forth on the Debtor's schedules, must have filed a proof of claim or request for compensation with the Bankruptcy Court not later than January 24, 2018, or April 2, 2018, for governmental entities.   This bar date was set by the Bankruptcy Court and noticed to all creditors pursuant to the Notice of Creditor's Meeting.

The Debtor has filed as a part of its schedules a list of all creditors, setting forth the identity of each creditor and an indication of the amount due each creditor.   Unless a claim is listed as disputed, contingent or unliquidated, each creditor's claim will be allowed in the amount and status stated on the Debtor's schedules.   Any creditor must have filed a proof of claim in a different amount or status not later than January 24, 2018, or April 2, 2018, for governmental entities. Failure to file a timely proof of claim will force a creditor to accept the amount of his/her claim as listed on the Debtor's schedules.

**Claims listed as disputed, contingent, or unliquidated will not be allowed unless a proof of claim with all supporting documents was filed prior to January 24, 2018.**   In the event a creditor has filed a proof of claim in these proceedings with which the Debtor disagrees, the Debtor has the option to file an objection to that claim and request the Court to determine the

true value of the claim.   The Debtor shall attempt to resolve all objections to claims prior to confirmation.   However, the Reorganized Debtor shall have 60 days from the effective date of the plan to file objections to claims.

Any proof of claim for a debt listed on the Debtor's Schedules **as disputed, contingent, or unliquidated** which is not timely filed shall be of **no force and effect**.   No distribution will be made to any creditor that has not timely complied with this provision.

## IX.
## Transfer of Claims

In the event that any creditor shall transfer its claim, it shall do so only in compliance with Bankruptcy Rule 3001, and it shall promptly notify the Debtor in writing of such transfer.   The Debtor shall be entitled to assume that no such transfer of any claim has been made by any creditor until after compliance and receipt of notice.   Each transferee of any claim shall take the claim subject to the provisions of the plan and to any request made, waiver or consent given, or other action taken under the Plan; and except as expressly otherwise provided in the notice.   The Debtor shall be entitled to assume conclusively that the transferee named in the notice shall thereafter be vested with all rights and powers under the Plan of the transferor with respect thereto.

## X.
## Specific Consideration in Voting

All of the foregoing give rise in the instant case to the following implications and risks concerning the Plan.

1.       While the Plan provides for certain payments at confirmation, such payments will only apply to allowed claims including claims arising from defaults.   Under the Bankruptcy Code a claim may not be paid until it is allowed.   A claim will be allowed in the absence of objection.

2.      A claim, including a claim arising from default, which has been objected to, will be heard by the Court at a regular evidentiary hearing and allowed in full or disallowed in full or in part.   While the Debtor bears the principal responsibility for claim objections, any interested party, including the creditors committee, may file claim objections.   Accordingly, payment on some claims, including claims arising from defaults, may be delayed until objections to those claims are ultimately settled.

# XI.
# Effect of Confirmation

Upon the date of the final order confirming the Plan:

(A)      Confirmation of the Plan shall enjoin the creditor from collecting any indebtedness from the Debtor or any company owned by the Debtor outside of the confirmed Plan,   whether or not they have accepted they have accepted the Plan;

(B)      Except as otherwise provided in the Plan, all of the property of the estate shall vest in the Debtor;

## A.      Litigation Injunction

Upon confirmation of the Plan, an injunction shall issue which prohibits all claimants (whether allowed or not) from pursuing claims in any forum outside this bankruptcy court if such claim is arises out of the actions of the Debtor.   This injunction shall issue notwithstanding any provision to the contrary in any contract involving the Debtor, for which the Debtor, an insider or affiliate, or a creditor of this estate may be liable, so long as the Debtor is not in Default under the Plan.

Upon confirmation of the Plan, in addition to all other relief allowed by the Bankruptcy Code, an injunction shall issue against all holders of claims preventing the enforcement of the claim

except as specifically stated in this Plan.     This litigation injunction is subject to the default provisions set forth in Section XI(B), supra.

**B.**     __Default__

Upon confirmation of a Chapter 11 Plan, the Plan operates as a contract between the Debtor and its creditors.   A default occurs if the Debtor fails to make any required payments contained in the Plan.   Each creditor, regardless of class, shall notify the Debtor and its Counsel of the default and allow 14 days for the Debtor to cure such default.   Notice of default must be made in writing to the Debtor and its Counsel and delivered by messenger or overnight delivery service with delivery completed (and the notice clock started) when it is delivered during normal business hours to the Debtor or Reorganized Debtor and its counsel. If no one is there (or if no one agrees to accept delivery) during normal business hours, then leaving the notice there during normal business hours would constitute completion of delivery.   Notice of default shall be given to the following:

> Mr. Herbert C. Jeffries
> 24900 Ford Road
> Porter, Texas 77365
>
> and
>
> Julie M. Koenig
> 815 Walker, Suite 1040
> Houston, Texas 77002

If the Debtor fails to cure the default within the 14 day period, the Creditor sending notice of default has the right to bring a lawsuit in the State District Court in Montgomery County, Texas against the Debtor or to apply to the Federal Bankruptcy Court for relief.   In addition, if the Debtor fails to cure the default within the 14 day period, the IRS may also pursue all of its remedies under Title 26 of the United States Code.

# XII.
## Jurisdiction of the Court

The Court shall retain jurisdiction to insure that this Plan is carried out and to determine any other matters in connection with this case, including, but not being limited to the following:

    (a)    Determining all valid liens and claims, as well as the amounts, against the Debtor and its property;

    (b)    Allowing the Debtor to enforce after confirmation any claims or causes of action which exist in the Debtor's favor as Debtor-in-Possession (which are the same claims or causes of action existing in favor of a Trustee in Bankruptcy) and which may not have been previously enforced by the Debtor;

    (c)    Settling any disputes between the Debtor and its creditors;

    (d)    Continuing jurisdiction, staying enforcement of any claims or liens until consummation of its plan;

    (e)    Retaining jurisdiction to sell any property of the Debtor, after confirmation, free and clear of all claims;

    (f)    Retaining jurisdiction to enter orders in aid of consummation of the Plan; and,

    (g)    Retaining such other jurisdiction as will insure that the intents and purposes of this Plan are fulfilled.

## XIII.
## Miscellaneous Provisions

1.      All claims and causes of action in favor of the Debtor are hereby reserved to be prosecuted after confirmation.

2.      Whenever the word "confirmation" is used in this Plan, it is intended to mean that date upon which the order confirming this Plan as entered by this Court becomes final and unappealable.

3.      Herbert C. Jeffries shall act as the Disbursing Agent under this Plan.

4.      Thirty days after confirmation, title to the remaining property of the Debtor, if any, will vest in the Reorganized Debtor, and the jurisdiction of the Court will cease, except as provided herein above.   However, the reinvesting of title shall not extinguish the rights and powers of the Debtor, but shall include the assignment of such rights and powers of the Debtor so that they may prosecute claims after confirmation.   Creditors shall retain their ability to utilize rights under 11 U.S.C. Section 1112(b)(8).   Upon a conversion of this case to Chapter 7, all property re-vested in the Debtor under the Plan, or subsequently acquired, shall constitute property of the bankruptcy estate in the converted case.

5.      Notwithstanding anything contained hereinabove, the Debtor reserves the right to object to and/or defend against any and all claims filed in this case.

6.      The Debtor utilizes an accrual basis for his accounting.

# XIV.
## Interim Operation

From and after the filing of this Plan and until such time as the order confirming this Plan has become final, this Plan has failed and another plan is proposed and acted upon, or an appeal has been filed and disposed of, or an order of adjudication of bankruptcy is entered, the Debtor shall continue in its current status on the terms and conditions heretofore authorized by orders of the Bankruptcy Court.   When the order of confirmation approving and confirming the Plan has become final and non-appealable, the rights and duties of the Debtor as Debtor-in-Possession appointed pursuant to order of the Bankruptcy Court shall terminate, provided that the Debtor performs all acts and executes any and all documents, instruments, and agreements which it is required to execute to consummate and carry out this Plan.

The Debtor also propose that all debts incurred after the filing of the petition initiating this proceeding and during the pendency of this proceeding, will be or shall have been paid in full and if not paid shall be entitled to payment under Class 1 hereunder.

The stay of actions and lien enforcement and all other matters provided for by Bankruptcy Code §362 shall remain effective and in full force until consummation of this Plan.

Respectfully submitted this 15th day of October, 2018.

**H.C. Jeffries Tower Company, Inc.**

By: _/s/ Herbert C. Jeffries, President_
Herbert C. Jeffries, President

**OF COUNSEL:**
**COOPER & SCULLY, PC.**


By:_____ /s/   *Julie M. Koenig*_____
        Julie M. Koenig
        SBA# 14217300
        815 Walker, Suite 1040
        Houston, Texas 77002
        713/236-6800 (Telephone)
        713/236-6880 (Telecopier)
        Julie.Koenig@cooperscully.com

Attorneys for the Debtor