United States Courts
Southern District of Texas
FILED

OCT 1 5 2018

David J. Bradley, Clerk of Court

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| H.C. JEFFRIES TOWER | § | CASE NO. 17-35027-H5-11 |
| COMPANY, INC. | § | (Chapter 11) |
|     Debtor | § | |
| | § | |
| FORD STEEL, LLC. | § | CASE NO. 17-35028 |
|     Debtor | § | (Chapter 11) |
| | § | JUDGE RODRIGUEZ |
| | § | |
| | § | JOINTLY ADMINISTERED UNDER |
| | § | CASE NO. 17-35027-H5-11 |

---

## Debtor Ford Steel, LLC's Fourth Amended Plan of Reorganization

---

**FORD STEEL, LLC,** Debtor herein, files this Fourth Amended Plan of Reorganization.

## Table of Contents

Topic     Page

Definitions................................................................................................2

Classes of Creditors and Specific Treatment of Claims ..................................5

Specification of All Claims Impaired and Not Impaired under the Plan ........................13

Modification of Plan ....................................................................13

Means for Implementing and Effectuating the Plan ..................................14

Reservation of Rights....................................................................14

Rejection of Executory Contracts ....................................................14

Bar Dates for Filing Proofs of Claim................................................15

Transfer of Claims ..................................................................................................16

Specific Consideration in Voting.........................................................................16

Effect of Confirmation ..........................................................................................17

Jurisdiction of the Court........................................................................................18

Miscellaneous Provisions......................................................................................19

Interim Operations ................................................................................................20

# I.
# Definitions

The following terms, when used in the Plan, shall unless the context otherwise requires, have the following meanings, respectively:

1.      "Allowed Amount" shall mean the dollar amount of a claim approved and allowed by final order of the Bankruptcy Court or through the filing of a proof of claim which has not been disallowed by the Bankruptcy Court.

2.      "Bankruptcy Code" is the Bankruptcy Code of 1978 as contained in Title 11 U.S.C. Section 101 et seq. and amendments thereto.

3.      "Bar Date" is the deadline previously established by the court, after which any proof of claim filed will have no effect on this Plan and no right to participate with other creditors under the Plan.   Pursuant to the Notice of Meeting of Creditors promulgated by the Court, the bar date occurs 90 days after the first date set for the meeting of creditors.   In the instant case, the meeting of creditors in the Chapter 11 Proceeding was held on October 26, 2017, and the bar date is **January 24, 2018 for creditors and April 2, 2018 for governmental entities.**

4.     "Claim" shall mean a right to payment from the Debtor's Estate, which is evidenced by a timely filed Proof of Claim which is allowed by the Court, or if a Proof of Claim is not filed by the creditor, a right which otherwise appears in the Debtors' bankruptcy schedules and (i) is not listed as disputed, contingent or unliquidated, (ii) has not been resolved by Final Order of the Court in this reorganization case or, (iii) which has been otherwise satisfied.

5.     "Class" shall mean any class into which Claims are classified pursuant to Section II.

6.     "Confirmation" shall mean the entry by the Bankruptcy Court of an order confirming the plan in accordance with Chapter 11 provisions of the Bankruptcy Code.

7.     "Confirmation Date" shall mean the date set by the Court pursuant to §1128 of the Bankruptcy Code for hearing on confirming the Plan on which the Court determines that the Plan meets the requirements of Chapter 11 of the Bankruptcy Code and is entitled to confirmation.

8.     "Consummation" shall mean the date upon which the Debtor makes its first payment to creditor(s) under a confirmed plan.

9.     "Creditors" shall mean all creditors of the Debtors holding claims for debts, liabilities, demands or claims of any character whatsoever, as defined in §101(4) of the Bankruptcy Code.

10.     "Creditors Committee" shall mean that Creditors Committee appointed by order of the Court, the members thereof and any successor members.   In the instant proceeding, the U.S. Trustee's office determined that it was unable to form a Creditors Committee.

11.     "Court" shall mean the United States Bankruptcy Court for the Southern District of Texas, Houston Division, presiding over the reorganization case, or, if necessary, the United States District Court for said District and Division having original jurisdiction over the reorganization

case.

12.     "Debtor" shall mean Ford Steel, LLC.

13.     "Disbursing Agent" shall mean Herbert C. Jeffries.

14.     "Disclosure Statement" shall mean the Debtor's Disclosure Statement.

15.     "Discharge" shall mean that completion of the Plan is intended to, will, and does fully discharge the Debtor as provided in Section 1141(d) of the Bankruptcy Code and the Plan does not provide for exceptions to discharge under 1141(d)(3), except as to any post-petition claims.   The Debtor shall not receive a discharge as it is a corporation.

16.     "Effective Date" shall mean the thirtieth day following the date of the order confirming the plan, if no notice of appeal is timely filed, or if a notice of appeal is filed, during which time no motion for stay pending appeal is granted or supersedeas bond is approved and filed; but, in the event a stay is granted or supersedeas bond is approved and filed, then it shall be the date on which the order confirming plan is a final order.

17.     "Final Decree" shall mean the order of the Court entered after all payments and distributions of monies called for under the Plan have been made (i) discharging the Trustee, if any, and canceling his bond, (ii) making provision by way of injunction or otherwise as may be equitable, and (iii) closing the reorganization case.

18.     "Final Order" shall mean an order of the Court which, not having been reversed, modified or amended and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become conclusive of all matters adjudicated thereby and is in full force and effect.

19.     "Lien" shall mean mortgage, pledge, judgment lien, security interest, charging

order, or other charge or encumbrance on property which is effective under applicable law as of the date of the commencement of the reorganization case.

20.     "Plan" shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

21.     "Pro Rata Share" shall mean the amount which is the result of multiplying the monies available for distribution to a named class of creditors by that fraction in which the numerator is the allowed amount of a particular claim in the named class and the denominator is the total of the amounts of all the claims in the named class.

22.     "Reorganized Debtor" shall mean the new company created on the effective date of the Plan.

23.     "Secured Claim" shall mean the claim of any creditor secured by liens on property, which liens are valid, perfected, and enforceable under applicable law, and are not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and are duly established in this case, to the extent of the value of the security, as determined in accordance with §506 of the Bankruptcy Code.

24.     "Unsecured Claims" shall mean all business claimants or other claimants of any nature, holding claims for unsecured debts, liabilities, demands or claims of any character whatsoever.

25.     "Unsecured Creditor" shall mean the holder of an unsecured claim.

## II.
## Classes of Creditors
## and Specific Treatment of Claims

The Plan of Reorganization proposes the continuation of the Debtor's business utilizing the

profits to fund the plan over a 5 to 10 year period.

The Debtor's Plan of Reorganization will provide for classification of creditors in accordance with the United States Bankruptcy Code.

**Class 1- Administrative Expenses - Legal Fees**.  Class 1 is unimpaired.  Class 1 are administrative claims entitled to priority by Section 507(a)(2) of the Bankruptcy Code and will consist of fees and expenses incurred by the Court appointed Counsel and North American Galvanizing Company, LLC., d/b/a AZZ Galvanizing - Houston West ("AZZ Galvanizing"). These fees and claims are incurred prior to the effective date of the Plan, as the same are finally approved and allowed by final order of the Court, and any other expenses incurred during the course of the Chapter 11 proceeding that have not yet been paid.   The members of this class are Cooper & Scully, PC, Counsel for the Debtor and AZZ Galvanizing.

Pursuant to 11 U.S.C. §503(b)(1)(D), the Internal Revenue Service is not required to file an application for the allowance of administrative tax expenses.

All claims in this class shall be paid in cash and in full in such amounts as may be allowed and approved by the Court on the effective date or after such claims are finally allowed, whichever is later, by the Debtor to the extent of available funds, or such claims may be paid in accordance with any agreement or waiver.   In either event, claims in this class shall be paid in full within the one (1) year period of the initial plan.   The anticipated total expenses to be paid in this class to Counsel should not exceed $75,000 to $100,000.00.

AZZ Galvanizing shall be paid the sum of $35,106.47 on the effective date of the Plan.

**Class 2 - The United States Trustee**.    Class 2 is unimpaired and consists of the post-confirmation claim of the office of the United States Trustee for its fees from the date of

confirmation until the Chapter 11 file is closed by the Bankruptcy Clerk.   These fees are based on the amount of disbursements made by the Debtor and are paid on a quarterly basis.   The reorganized Debtor shall be responsible for timely payment of the United States Trustee quarterly fees incurred pursuant to 28 U.S.C. §1930(a)(6).   Any fees due as of the date of confirmation of the plan will be paid in full on the effective date of the plan.   After confirmation, the reorganized Debtor shall pay United States Trustee quarterly fees as they accrue until this case is closed by the Court.   The Debtor shall file with the Court and serve on the United States Trustee a quarterly financial report for each quarter (or portion thereof) that the case remains open in a format prescribed by the United States Trustee.

All pre-confirmation quarterly fees shall be paid by the effective date of the Plan.

**Class 3A - Priority Claim of the Internal Revenue Service.**   Class 3A is impaired and consists of the priority claim of the Internal Revenue Service in the amount of $281,071.23 with interest at the rate of 5%.   This claim will be paid in equal monthly installments of $7,639.58 over a five year period[1].   The first payment shall be made on the 15th day of the first full month of the first full quarter following the effective date of the plan and continue until paid in full.   The first payment is estimated to be on January 15, 2019.

If the reorganized debtor defaults on the plan payments due to the IRS, the outstanding balance is immediately due and payable.   Payments shall be for the entire amount owed to the IRS under the plan.   The IRS may collect these unpaid tax liabilities through the administrative collection provisions Title 26 of the Internal Revenue Code.

**Class 4A - Secured Claim of the Texas Workforce Commission.**   Class 4A is impaired

---

1   The five year period begins on the filing date although the payments do not begin until after the effective date.   This payment amount is presuming payments begin in January of 2019.   If the actual payments begin after January of 2019, the amount of the payments will be adjusted upwards to ensure that all payments in this Class are made within 5 years of the filing date.

and consists of the secured claim of the Texas Workforce Commission in the total amount of $8,196.82 with interest at the rate of 5.5%.   This claim will be paid in equal quarterly installments of $2,257.72 over a one year period.   Upon confirmation, Counsel for the Texas Workforce Commission shall calculate and inform the Debtor of the exact amount of the payments.   The first payment shall be made on the 15th day of the first full month of the first full quarter following the effective date of the plan and continue until paid in full.   The first payment is estimated to be on January 15, 2019.

Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, these provisions will govern the treatment of the claims of the Texas Comptroller of Public Accounts and Texas Workforce Commission, (collectively the "Texas Taxing Authorities"): (1) nothing provided in the Plan or this Confirmation Order shall affect or impair any statutory or common law setoff rights of the Texas Taxing Authorities in accordance with 11 U.S.C. § 553; (2) nothing provided in the Plan or this Confirmation Order shall affect or impair any rights of the Texas Taxing Authorities to pursue any non-debtor third parties for tax debts or claims; (3) nothing provided in the Plan or this Confirmation Order shall be construed to preclude the payment of interest on the Texas Taxing Authorities' administrative expense tax claims; (4) to the extent that interest is payable with respect to any administrative expense, priority or secured tax claim of the Texas Taxing Authorities, the interest rate shall be 5.5% per annum; and (5) the Texas Taxing Authorities are not required to file a motion or application for payment of administrative expense claims; the Texas Taxing Authorities' administrative expense claims are allowed upon filing, subject to objection on substantive grounds.

A failure by the Debtor or Reorganized Debtor to make a plan payment to an agency of the

State of Texas shall be an Event of Default.   If the Debtor or Reorganized Debtor fails to cure an Event of Default as to an agency of the State of Texas within ten (10) days after service of a written notice of default, then that agency may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies available under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in this court.   The Debtor and/or Reorganized Debtor can receive up to three (3) notices of default, however, the third default cannot be cured.

The terms set forth herein shall govern the treatment of the claims of the Texas Taxing Authorities notwithstanding anything to the contrary in the Plan or Confirmation Order."

**Class 4B - Secured Claim of Montgomery County.**   Class 4B is impaired and consists of the secured claim of Montgomery County in the amount of $85,795.20 plus interest at the rate of 12%.   This claim will be paid in equal quarterly installments of $10,697.63 until the Property is sold or refinanced.   The first payment shall be made on the 15th day of the third full month of the first full quarter following the effective date of the plan and continue until the Property is sold, anticipated to be in six to twelve months.   The first payment is estimated to be on January 15, 2019.

Upon the sale or refinance, Counsel for Montgomery County shall calculate and inform the Debtor of the exact amount of the payoff.

If the Property fails to sell or be refinanced within one year from the date of confirmation, the Plan Injunction shall lift to allow Equitable, Bank, Montgomery County, and/or the Internal Revenue Service to foreclose on the Property in accordance with the laws of the State of Texas without further order of the Bankruptcy Court.

The claimant in this class shall retain all statutory liens on the Debtor's property.

Post-petition secured ad valorem taxes will be paid in the ordinary course of business and failure to do so shall result in a default under the terms of the confirmed Plan.

Default of the Plan shall be defined as the failure of the proponent of the plan to make payments or perform any action required to be made under the terms of the confirmed plan.

In the event of a default, there will be full reinstatement of the administrative collection powers and rights of this ad valorem Taxing Authority as they existed prior to the filing of the bankruptcy petition in this case, including, but not limited to, the assessment of taxes, the filing of Notices of Tax Liens and the powers of levy, seizure and sale.

**Class 4C - Secured Claim of the Bank & Trust of Bryan/College Station**.   Class 4C is impaired. It consists of the Secured Claim of The Bank & Trust of Bryan/College Station (the "Bank") in the allowed amount of $678,078.16 as of the date of filing, with interest at the rate of 8% over ten (10) years.

The Bank retains a blanket first lien on all of Debtor's personal property. Such personal property consists of all Debtor's fixtures, furniture, equipment, inventory, accounts, chattel paper, general intangibles, whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind related to any of the foregoing; and all proceeds relating to any of the foregoing (including insurance, general intangibles, and other account proceeds). The Bank also holds a second lien on Debtor's real estate with improvements. The Bank's claim is also secured by a blanket first lien on the jointly-administered Debtor H.C. Jeffries Tower Company, Inc.'s furniture, fixtures, equipment, inventory, accounts, chattel paper, general intangibles, whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to

any of the foregoing; all records of any kind related to any of the foregoing; and all proceeds relating to any of the foregoing (including insurance, general intangibles, and other account proceeds). The Bank's claim shall be paid solely through this Debtor's Plan. However, should this Debtor default in payments to the Bank under the Plan, the Plan injunction under this Debtor's Plan and the Plan injunction under the joint-administered Debtor's plan of reorganization shall lift to allow the Bank to foreclose on its collateral owned by this Debtor and/or the jointly-administered Debtor under applicable state law.

The Bank has received monthly payments in the amount of $10,000 by the 25th day of each month during the pendency of this case from this Debtor. The Bank shall continue to receive payment in the amount of $10,000 through the Effective Date of the Plan from this Debtor. On the fifteenth day of the first full month following the Effective Date of the Plan, the Reorganized Debtor shall begin making payments to the Bank in accordance with the loan documents in the amount of $8,270.44 for a period of ten (10) years or until the Debtor's Property upon which the Bank retains a second lien is sold or refinanced at which time the Bank's claim shall be irrevocably paid in full and the Bank's liens against the Debtor's Property  and the jointly-administered debtor, H.C. Jeffries Tower Company, Inc. shall be released, but only upon the irrevocable payment in full of the Class 4C Allowed Secured Claim. The Bank shall retain its first lien on the Debtor's personal property, its second lien on the Debtor's real property, and its first lien on the jointly-administered debtor's personal property until the Bank's Class 4C Allowed Secured Claim is paid in full.

If the Debtor's real property fails to sell or be refinanced in accordance with the Plan within one year from the date of confirmation, the Plan's injunction shall lift to allow Equitable, the Bank,

Montgomery County, and/or the Internal Revenue Service to foreclose on the Debtor's real property in accordance with the laws of the State of Texas.

Until such time as the Bank's claim is paid in full, the Debtor shall provide the Bank, through its counsel, with monthly operating reports in the same form promulgated by the United States Trustee with proof of payments under its confirmed plan. Furthermore, by the tenth day of each month, the Debtor shall provide the Bank, through its counsel, with monthly balance sheets, income statements, cash flow statements, and reports of the Debtor's Accounts Receivable as of the last day of the preceding month until such time as the Bank's claim is paid in full. Such Accounts Receivable reports shall contain the entity owing money to the Debtor, the amount each entity owes the Debtor, and contact information including telephone number and mailing address of each entity.

**Class 4D - Secured Claim of The Internal Revenue Service**.   Class 4D is impaired and consists of the secured claim of the Internal Revenue Service ("IRS") amount of $4,297,205.09 with interest at the rate of 5%.    This claim is secured and perfected by the Debtor's real and personal property through IRS tax lien filings in the real property records of Montgomery County, Texas, and filed with the Texas Secretary of State.

This claim will be paid in monthly installments as follows:

a. Approximately $2,268,705.00 from the refinance/sale of the real property and the refinancing of the equipment, estimated to be in December of 2018.    If the real property is refinanced, the IRS shall subordinate its lien claim to that of the financier. Whether the real property is sold or refinanced and/or the equipment is refinanced, the IRS shall receive all proceeds from the sale and/or refinance after closing costs,

origination fee(s) and payment in full of Equitable, Bank and Montgomery County. After the sale and/or refinance, the IRS shall also receive liens on the personal property of Ford as additional security for all amounts owed to the IRS by Ford.

b. $59,147.68 per month for the remaining forty-three months until paid in full. The claim of the IRS shall be paid in full within five years from the date the bankruptcy case was filed.

c. The Debtor shall provide the IRS, through its Counsel, with monthly operating reports in the same form as promulgated by the United States Trustee with proof of payments under its confirmed plan until the real property is sold or refinanced.

The first payment shall be made on the 15th day of the first full month of the first full quarter following the effective date of the plan and continue until paid in full, a time not to exceed five years from the date the bankruptcy case was filed.    The first payment is anticipated to be on January 15, 2019.

If the Property fails to sell or be refinanced within one year from the date of confirmation, the Plan Injunction shall lift to allow Equitable, Bank, Montgomery County, and/or the Internal Revenue Service to foreclose on the Property and the payments in this class will be adjusted accordingly to insure compliance with 11 U.S.C. §1129(a)(9)(C).   Any foreclosure on the Property will be in accordance with the laws of the State of Texas and without the necessity of further orders of the Bankruptcy Court.

If the reorganized debtor defaults on the plan payments due to the IRS, the outstanding balance is immediately due and payable.    Payments shall be for the entire amount owed to the IRS under the plan.   The IRS may collect these unpaid tax liabilities through the administrative

collection provisions under Title 26 of the Internal Revenue Code.

**Class 4E - Secured Claim of Equitable Life and Casualty Insurance Company**.    Class 4E is impaired and consists of the Secured Claim of Equitable Life and Casualty Insurance Company ("Equitable")in the Allowed Amount of $2,731,884.29[2] with a per diem after October 31, 2018 of $915.59.    This claim is secured by a mortgage lien on the Debtor's real property with improvements (the "Property").

This claim shall be paid in equal monthly payments of $24,306.81 with interest at the rate of 7.5% per annum until it becomes due and payable in full upon the earlier of (i) a sale or refinance of the Property that results in the irrevocable payment in full of the Class 4E Allowed Secured Claim, or (ii) 12 months after the Effective Date of the Plan. During the pendency of the Chapter 11 proceeding, Equitable has received monthly payments in the amount of $28,000.00 by the 25th day of each month.    Equitable shall continue to receive the monthly payment in the amount of $28,000.00 through the Effective Date of the Plan. On the fifteenth day of the first full month following the Effective Date of the Plan, the Reorganized Debtor shall begin making monthly payments to Equitable in the amount of $24,306.81. These payments shall continue monthly until the earlier of (i) a sale or refinance of the Property that results in the irrevocable payment in full of the Class 4E Allowed Secured Claim, or (ii) 12 months after the Effective Date of the Plan.

Equitable shall be irrevocably paid in full from any sale or refinance of the Property.    Equitable's Liens against the Property shall be released only upon the

---

[2]    The Secured Claim of Equitable in the Allowed Amount of $2,731,884.29, with a per diem after October 31, 2018, of $915.59, will increase dollar for dollar in the event (and only to the extent) that Equitable's attorney's fees and expenses for August - October, 2018, exceed $18,000.00.

irrevocable payment in full of the Class 4E Allowed Secured Claim.   Equitable shall retain its Liens on the Property until its Class 4E Allowed Secured Claim is paid in full.

Notwithstanding anything to the contrary in the Plan or anywhere else, if (a) the Debtor or Reorganized Debtor fails to make any monthly payment to Equitable provided for above after ten days' notice of such failure is provided to the Debtor or Reorganized Debtor and its counsel of record sent via overnight delivery, or (b) the Property fails to sell or be refinanced (resulting in the irrevocable payment in full of the Class 4E Allowed Secured Claim) within one year from the date of confirmation, then the Plan Injunction shall automatically lift at such time to allow Equitable, Bank, Montgomery County, and/or the Internal Revenue Service to prepare for and foreclose on the Property in accordance with the laws of the State of Texas ("Foreclosure Rights"). In the event of either (a) or (b) above, neither the Reorganized Debtor nor any representative or affiliate of the Reorganized Debtor (including without limitation Herbert C. Jeffries), shall take any action to delay or interfere with the exercise of any Foreclosure Rights.   The prohibited actions shall include, but not be limited to, seeking injunctive relief or bankruptcy protection that bars or delays the exercise of any Foreclosure Rights

The Debtor shall provide Equitable, through its Counsel, with monthly operating reports in the same form as promulgated by the United States Trustee with proof of payments under its confirmed plan until the Property is sold or refinanced and the Class 4E Allowed Secured Claim is paid in full.

**Class 5 - General Unsecured Claims.**   Class 5 is impaired and consists of the unsecured claims in the amount of $1,585,419.08, excluding insider claims.   These claims shall be paid

100% of their claims in equal quarterly installments over a 5 year period.   The first payment shall be made on the 15th day of the third full month of the first full quarter following the effective date of the plan.   The first payment is estimated to be on March 15, 2019.

The anticipated quarterly installment to these creditors is as follows:

a. $50,000.00 over the first year;

b. $60,000.00 over the second year;

c. $75,000.00 over the third year;

d. $75,000.00 over the fourth year; and,

e. $122,321.00 over the fifth year.

**Class 6 - Insider Steve Bales.**      Class 6 is impaired and consists of the insider unsecured claims of Steve Bales in the total amount of $3,420,822.11. Steve Bales is a private investor and minority shareholder of the Debtor.   He initially factored receivables for the Debtor and those that went unpaid were converted to a note.   These claims will be paid in equal monthly installments of $57,013.70 over a five year period.  **However, payment on these claims shall not begin until the fifteenth day of the first full month of the first full quarter following completion of all payment to Class 5, supra.**     It is anticipated that these claims shall be paid in months 61 - 120 of the Plan.

**Class 7 - Equity Security Holders.**     Class 7 is impaired and consists of the equity security holders of the Debtor, Herbert Jeffries and Steve Bales.    During the term of the plan payments under the confirmed plan, Herbert Jeffries shall operate the Debtor and insure that all payments under the plan are paid.    Steve Bales has agreed to subordinate payment of his Class 6 claim until all other creditors under the Plan have been paid in full.   As the Debtor is paying

100% to the unsecured creditors, they will retain their respective interests in the Reorganized Debtor. Therefore, on the Effective Date, Herbert Jeffries shall receive 86% and Steve Bales shall receive 14% of the Reorganized Debtor.

## III.

## Specification of All Claims Impaired and Not Impaired under the Plan

Classes 1 & 2 are unimpaired under the Plan.   Classes 3A, 4A, 4B, 4C, 4D, 4E, 5, 6 & 7 are impaired under the Plan.

## IV.
## Modification of Plan

The Plan may be amended or modified by the Debtor with the approval of the Court after notice and hearing.   If the Court finds after hearing on notice to any committee appointed under the Code and any other person designated by the Court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the Plan.

## V.
## Means for Implementing and Effectuating the Plan

Implementation of the Plan requires entry of an order by the Bankruptcy Court confirming the Plan.   The Plan is to be implemented, if accepted and approved by the Bankruptcy Court, in its entire form.   The Plan of Reorganization proposes to continue the Debtor's operations and utilize the profits to fund the Classes over a 5 - 10 year period.

## VI.

## Reservation of Rights

Neither the filing of the Plan, nor any statement or provision contained herein, nor the taking by the Debtor or any creditor of any action with respect to the Plan shall (i) be or be deemed to be an admission against interest and (ii) until the effective date, be deemed to be a waiver of any rights which the Debtors might have against a creditor, and until the effective date all such rights are expressly and specifically reserved.   In the event that the effective date does not occur, neither the Plan nor any statement contained therein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of the reorganization case.

## VII.
## Rejection of Executory Contracts

The Debtor rejects all unassumed leases and executory contracts except for the lease agreement with H.C. Jeffries Tower Company, Inc. which shall be assumed.

## VIII.
## Bar Dates for Filing Proofs of Claim

Any creditor desiring to receive a distribution under the provisions of this Plan, and whose claim is not evidenced by a court order or set forth on the Debtor's schedules, must have filed a proof of claim or request for compensation with the Bankruptcy Court not later than January 24, 2018, or April 2, 2018, for governmental entities.   This bar date was set by the Bankruptcy Court and noticed to all creditors pursuant to the Notice of Creditor's Meeting.

The Debtor has filed as a part of its schedules a list of all creditors, setting forth the identity of each creditor and an indication of the amount due each creditor.   Unless a claim is listed as disputed, contingent or unliquidated, each creditor's claim will be allowed in the amount and status stated on the Debtor's schedules.   Any creditor must have filed a proof of claim in a different

amount or status not later than January 24, 2018, or April 2, 2018, for governmental entities. Failure to file a timely proof of claim will force a creditor to accept the amount of his/her claim as listed on the Debtor's schedules.

**Claims listed as disputed, contingent, or unliquidated will not be allowed unless a proof of claim with all supporting documents was filed prior to January 24, 2018.**     In the event a creditor has filed a proof of claim in these proceedings with which the Debtor disagrees, the Debtor has the option to file an objection to that claim and request the Court to determine the true value of the claim.   The Debtor shall attempt to resolve all objections to claims prior to confirmation.   However, the Reorganized Debtor shall have 60 days from the effective date of the plan to file objections to claims.

Any proof of claim for a debt listed on the Debtor's Schedules **as disputed, contingent, or unliquidated** which is not timely filed shall be of **no force and effect**.   No distribution will be made to any creditor that has not timely complied with this provision.

## IX.
## Transfer of Claims

In the event that any creditor shall transfer its claim, it shall do so only in compliance with Bankruptcy Rule 3001, and it shall promptly notify the Debtor in writing of such transfer.   The Debtor shall be entitled to assume that no such transfer of any claim has been made by any creditor until after compliance and receipt of notice.   Each transferee of any claim shall take the claim subject to the provisions of the plan and to any request made, waiver or consent given, or other action taken under the Plan; and except as expressly otherwise provided in the notice.   The Debtor shall be entitled to assume conclusively that the transferee named in the notice shall thereafter be vested with all rights and powers under the Plan of the transferor with respect thereto.

# X.
## Specific Consideration in Voting

All of the foregoing give rise in the instant case to the following implications and risks concerning the Plan.

1.      While the Plan provides for certain payments at confirmation, such payments will only apply to allowed claims including claims arising from defaults.   Under the Bankruptcy Code a claim may not be paid until it is allowed.   A claim will be allowed in the absence of objection.

2.      A claim, including a claim arising from default, which has been objected to, will be heard by the Court at a regular evidentiary hearing and allowed in full or disallowed in full or in part.   While the Debtor bears the principal responsibility for claim objections, any interested party, including the creditors committee, may file claim objections.   Accordingly, payment on some claims, including claims arising from defaults, may be delayed until objections to those claims are ultimately settled.

# XI.
## Effect of Confirmation

Upon the date of the final order confirming the Plan:

(A)    Confirmation of the Plan shall enjoin the creditor from collecting any indebtedness from the Debtor or any company owned by the Debtor outside of the confirmed Plan,   whether or not they have accepted they have accepted the Plan;

(B)    Except as otherwise provided in the Plan, all of the property of the estate shall vest in the Debtor;

**A.     Litigation Injunction**

Upon confirmation of the Plan, an injunction shall issue which prohibits all claimants

(whether allowed or not) from pursuing claims in any forum outside this bankruptcy court if such claim is arises out of the actions of the Debtor.   This injunction shall issue notwithstanding any provision to the contrary in any contract involving the Debtor, for which the Debtor, an insider or affiliate, or a creditor of this estate may be liable, so long as the Debtor is not in Default under the Plan.

Upon confirmation of the Plan, in addition to all other relief allowed by the Bankruptcy Code, an injunction shall issue against all holders of claims preventing the enforcement of the claim except as specifically stated in this Plan.     This litigation injunction is subject to the default provisions set forth in Section XI(B), supra.

### B.   Default

Upon confirmation of a Chapter 11 Plan, the Plan operates as a contract between the Debtor and its creditors.   A default occurs if the Debtor fails to make any required payments contained in the Plan.   Each creditor, regardless of class, shall notify the Debtor and its Counsel of the default and allow 14 days for the Debtor to cure such default.   Notice of default must be made in writing to the Debtor and its Counsel and delivered   by messenger or overnight delivery service with delivery completed (and the notice clock started) when it is delivered during normal business hours to the Debtor or Reorganized Debtor and its counsel. If no one is there (or if no one agrees to accept delivery) during normal business hours, then leaving the notice there during normal business hours would constitute completion of delivery.   Notice of default shall be given to the following:

> Mr. Herbert C. Jeffries
> 24900 Ford Road
> Porter, Texas 77365
>
> and

Julie M. Koenig
815 Walker, Suite 1040
Houston, Texas 77002

If the Debtor fails to cure the default within the 14 day period, the Creditor sending notice

of default has the right to bring a lawsuit in the State District Court in Montgomery County, Texas

against the Debtor or to apply to the Federal Bankruptcy Court for relief.  In addition, if the

Debtor fails to cure the default within the 14 day period, the IRS may also pursue all of its remedies

under Title 26 of the United States Code.

## XII.
## Jurisdiction of the Court

The Court shall retain jurisdiction to insure that this Plan is carried out and to determine

any other matters in connection with this case, including, but not being limited to the following:

(a)     Determining all valid liens and claims, as well as the amounts, against the

Debtor and its property;

(b)     Allowing the Debtor to enforce after confirmation any claims or causes of

action which exist in the Debtor's favor as Debtor-in-Possession (which are

the same claims or causes of action existing in favor of a Trustee in

Bankruptcy) and which may not have been previously enforced by the

Debtor;

(c)     Settling any disputes between the Debtor and its creditors;

(d)     Continuing jurisdiction, staying enforcement of any claims or liens until

consummation of its plan;

(e)     Retaining jurisdiction to sell any property of the Debtor, after confirmation,

free and clear of all claims;

(f)     Retaining jurisdiction to enter orders in aid of consummation of the Plan; and,

(g)     Retaining such other jurisdiction as will insure that the intents and purposes of this Plan are fulfilled.

# XIII.
## Miscellaneous Provisions

1.     All claims and causes of action in favor of the Debtor are hereby reserved to be prosecuted after confirmation.

2.     Whenever the word "confirmation" is used in this Plan, it is intended to mean that date upon which the order confirming this Plan as entered by this Court becomes final and unappealable.

3.     Herbert C. Jeffries shall act as the Disbursing Agent under this Plan.

4.     Thirty days after confirmation, title to the remaining property of the Debtor, if any, will vest in the Reorganized Debtor, and the jurisdiction of the Court will cease, except as provided herein above.   However, the reinvesting of title shall not extinguish the rights and powers of the Debtor, but shall include the assignment of such rights and powers of the Debtor so that they may prosecute claims after confirmation.   Creditors shall retain their ability to utilize rights under 11 U.S.C. Section 1112(b)(8).   Upon a conversion of this case to Chapter 7, all property re-vested in the Debtor under the Plan, or subsequently acquired, shall constitute property of the bankruptcy estate in the converted case.

5.     Notwithstanding anything contained hereinabove, the Debtor reserves the right to object to and/or defend against any and all claims filed in this case.

6.     The Debtor utilizes an accrual basis for its accounting.

## XIV.
## Interim Operation

From and after the filing of this Plan and until such time as the order confirming this Plan has become final, this Plan has failed and another plan is proposed and acted upon, or an appeal has been filed and disposed of, or an order of adjudication of bankruptcy is entered, the Debtor shall continue in its current status on the terms and conditions heretofore authorized by orders of the Bankruptcy Court.  When the order of confirmation approving and confirming the Plan has become final and non-appealable, the rights and duties of the Debtor as Debtor-in-Possession appointed pursuant to order of the Bankruptcy Court shall terminate, provided that the Debtor performs all acts and executes any and all documents, instruments, and agreements which it is required to execute to consummate and carry out this Plan.

The Debtor also propose that all debts incurred after the filing of the petition initiating this proceeding and during the pendency of this proceeding, will be or shall have been paid in full and if not paid shall be entitled to payment under Class 1 hereunder.

The stay of actions and lien enforcement and all other matters provided for by Bankruptcy Code §362 shall remain effective and in full force until consummation of this Plan.

Respectfully submitted this 15th day of October , 2018.

**FORD STEEL, LLC**.

By:   */s/ Herbert C. Jeffries, Managing Member*
             Herbert C. Jeffries, Managing Member

**OF COUNSEL:**
**COOPER & SCULLY, PC.**


By:_____ */s/   Julie M. Koenig*_____
      Julie M. Koenig
      SBA# 14217300
      815 Walker, Suite 1040
      Houston, Texas 77002
      713/236-6800 (Telephone)
      713/236-6880 (Telecopier)
      Julie.Koenig@cooperscully.com

Attorneys for the Debtor