IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** § | | |
| § | | **Case No. 17-35027** |
| **H.C. Jeffries Tower Company, Inc.,** § | | |
| § | | **Chapter 11** |
| **Debtor.** § | | |
| § | | |
| **In re:** § | | |
| § | | **Case No. 17-35028** |
| § | | |
| **Ford Steel, LLC,** § | | |
| § | | **Chapter 11** |
| **Debtor.** § | | |

**Supplemental Objection by the United States of America to Amended Plans of Reorganization Proposed by H.C. Jeffries Tower Company, Inc., and Ford Steel, LLC**
**(Related to Doc. Nos. 143, 155 and 163)**

**To the Honorable Eduardo V. Rodriguez,**
**United States Bankruptcy Judge:**

The United States of America (the "United States"), acting on behalf of its Internal Revenue Service (the "IRS"), objects to both amended plans of reorganization proposed by Ford Steel, LLC, and H.C. Jeffries Tower Company, Inc.

**Summary**

The amended plans proposed by the Debtors fail to resolve many of the United States' objections to confirmation. Moreover, the amended plan proposed by Ford Steel Company now attempts to compel the IRS to subordinate its lien—creating a new problem.

The United States files this Supplemental Objection because (a) the most-recent amended plan proposed by Ford Steel is the first to expressly state that it seeks to compel the IRS to subordinate its lien, and (b) Ford Steel filed this amended plan immediately before the deadline to object to confirmation. The United States is not waiving any of the arguments set forth in its Objection at Doc. No. 143 by filing this Supplemental Objection.

1

## Procedural History

On August 21, 2017, H.C. Jeffries Tower Company ("H.C. Jeffries") and Ford Steel, LLC ("Ford Steel") (collectively, the "Debtors"), filed voluntary petitions for protection under chapter 11 of the Bankruptcy Code. [Cases No. 17-35027 and 17-35028]. No trustee has been appointed, and the Debtors continue to manage their affairs as debtors-in-possession.

On June 7, 2018, H.C. Jeffries filed its First Amended Plan of Reorganization and Ford Steel filed its Third Amended Plan of Reorganization. [Doc. No. 114 and 116]. On June 15, 2018, the Court approved the disclosure statements for both debtors. [Doc. Nos. 121 and 122].

On October 2, 2018, the United States filed its objection to confirmation of the plans proposed by both Debtors. [Doc. No. 143].

Also on October 2, 2018, the Court continued the deadline to object to confirmation to October 16, 2018. [Doc. No. 144].

The morning of October 16, 2018, Debtors' counsel e-mailed amended plans to certain creditors' counsel.[1] The amended plan for Ford Steel seeks to either (a) take out new financing secured by its real property and compel the IRS to subordinate its lien to this new financing, or (b) sell the real property.[2] The plan does not specify an interest rate for the proposed refinancing, a proposed minimum sale price, or proposed purchaser.

## Supplemental Objection

The United States still objects to confirmation of the Debtors' chapter 11 plans for the reasons stated in its Objection. The United States files this Supplemental Objection to provide the

---

[1] Debtors' counsel informed creditors' counsel that the Debtor had tried to file these plans by ECF on October 15 but experienced technical problems.

[2] The plan provides that "the IRS shall also receive liens on the personal property of Ford as additional security . . . ," but this provision is meaningless. The IRS already has a lien encumbering the personal property of Ford Steel. 26 U.S.C. § 6321.

2

Court with additional arguments as to why the Court should not confirm the amended plan proposed by Ford Steel.

I.    **Still Not Fair and Equitable**

Ford Steel cannot satisfy § 1129(a)(8) because its plan impairs the United States and the United States has not accepted it. [Doc. No. 163, pp. 7 & 12]. In order for the Court to confirm Ford Steel's plan, Ford Steel must satisfy § 1129(b) by proving that its plan:

> does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted the plan.

11 U.S.C. § 1129(b)(1). Section 1129(b)(2)(A) provides that a plan can only be "fair and equitable" "[w]ith respect to a class of secured claims" if it provides that:

(a)   Secured creditors retain their liens and secured creditors receive deferred cash payments;

(b)   Collateral is sold and liens attach to sale proceeds; or

(c)   Secured creditors receive the "indubitable equivalent" of their secured claims.

Because Ford Steel only proposes to refinance or sell the real property, only the first two options apply.

   A.   **Refinance would not be fair and equitable**

If the IRS is required to subordinate its lien to a new lender, then the United States is not retaining its lien in accordance with 11 U.S.C. § 1129(b)(2)(A)(i)(I). In *Ford Products Corp.*, the debtor proposed a plan of reorganization that compelled two secured creditors to subordinate their lien rights to leaseholds. *In re Ford Products Corp.*, 159 B.R. 693, 694 (Bankr. S.D. N.Y. 1993).[3] The secured creditors objected to confirmation. In a concise opinion, the bankruptcy court held

---

[3] Even though *Ford Products* is factually distinguishable—it deals with future leaseholds, not future liens—the United States discusses it first because a number of courts analyzing facts similar to the Ford Steel plan have cited it.

3

that forcing secured creditors to subordinate their lien rights was inconsistent with them "retaining their liens . . . in accordance with 11 U.S.C. § 1129(b)(2) . . . ." *Id.* at 695. The court reasoned that (a) at the time the liens primed the tenants' leasehold interests, and (b) forcing subordination would prevent pre-existing secured creditors from extinguishing leaseholds. *Id.* This was not fair and equitable.[4]

The *Scrubs Car Wash* case generated a similar holding. *In re Scrubs Car Wash, Inc.*, 527 B.R. 453 (Bankr. D. Co. 2014). The debtor's plan in that case proposed to pay the first-lien secured creditor over five years with a balloon at the end of the fifth year. *Id.* at p. 457. However, the debtor's plan purported to allow the Debtor to (a) take out a new loan during the five year period, (b) subordinate the existing lien to the new lender, and (c) use the proceeds of the new financing to make the balloon payment. *Id.* The secured creditor objected to confirmation, arguing that this treatment did not comport with § 1129(b). *Id.* at 458. The bankruptcy court agreed with the secured creditor. *Id.* at 459 (citing *Ford Products*, 159 B.R. 693; *In re EFH Grove Tower Associates*, 105 B.R. 310 (Bankr. E.D. N.C. 1989)). The bankruptcy court held that it was not "fair and equitable" under § 1129(b) for a plan to subordinate an existing lien to a future interest in real property. The *Scrubs Car Wash* plan was not fair and equitable, and the bankruptcy court denied confirmation.

*EFH Grove Tower* is another instance where a court rejected a proposed subordination of secured debt. 105 B.R. 310. The debtor owned three office buildings subject to various liens. Three lenders each held a first lien on one of the office buildings, and Lake Johnson held a second

---

[4] *Cottonwood Corners* is a more-recent case reaching the same result on similar facts. *In re Cottonwood Corners Phase V, LLC*, 2012 WL 566426 at *23, Case No. 11-12663 (Bankr. D. N.M. 2012) (citing *Ford Products*, 159 B.R. 693). The debtor's proposed plan required existing secured creditors to subordinate the leasehold interests of future tenants. The bankruptcy court concluded that this was not "fair and equitable" under §1129(b)(2)(A)(i) and denied confirmation.

lien encumbering all three buildings together. The debtor's plan proposed to borrow $1,200,000, with (a) $600,000 secured by a lien senior to Lake Johnson, and (b) $600,000 secured by a lien *pari pasu* with Lake Johnson's lien. *Id.* at 312. The plan also proposed to enjoin Lake Johnson from exercising its lien rights after confirmation for more than a year. *Id.* at 313. All classes except Lake Johnson voted to accept the plan. *Id.* at 312-13.

Lake Johnson objected arguing that the proposed treatment of its secured claim was not "fair and equitable." *Id.* at 313. The bankruptcy court found that the proposal put too much risk on Lake Johnson. The proposal would result in a greater amount of secured debt senior to Lake Johnson than existed at the time of confirmation. *Id.* In reaching its determination, the bankruptcy court specifically cited the fact that "[t]he terms of the new loan are unspecified . . . ."[5]

The United States is only able to find one case where a bankruptcy court permitted a chapter 11 plan to subordinate an existing lien to a lien securing post-confirmation financing. *In re Sherwood Square Associates*, 107 B.R. 872 (Bankr. D. Md. 1989). The *Sherwood* debtor proposed a plan that would (a) cause the existing secured creditor to retain its lien, and (b) allow the debtor to take out post-confirmation financing and subordinate the existing lien, subject to specific conditions. First, the debtor could only subordinate the existing lien for financing used to construct improvements to the real property that was subject to the existing lien. Second, the debtor was limited on the amount by which it could subordinate the existing lien—it could only subordinate up to 80% of the value added by the proposed improvements "as demonstrated by a written appraisal." The bankruptcy court found that these conditions ensured that the value securing the

---

[5] Although the Debtors have provided the United States with a term sheet, the terms of the proposed post-confirmation financing do not appear in Ford Steel's plan. *See In re Star Ambulance Service, LLC*, 540 B.R. 251, 266 (Bankr. S.D. Tex. 2015) (concluding that plan was not feasible where it failed to provide certain detailed information). If the post-confirmation financing is a high-interest loan—as the United States suspects it will be—the United States will be put in a similar position to Lake Johnson in *EFH*.

existing lienholder's claim would not be diminished. *Id.* at 881. Based on this, the Court concluded that the proposed plan was fair and equitable. *Id.*

The refinancing proposed in Ford Steel's is more like *Scrubs Car Wash* or *EFH Grove Tower*. Although the Ford Steel plan does not specify the terms of the proposed post-confirmation financing, the best-case scenario for the IRS would be that Ford Steel uses 100% of the loan proceeds to (a) satisfy secured debt with liens senior to the IRS, and (b) pay down the IRS's secured claim. That might leave the IRS in a relatively similar position immediately after financing, but not for long. What is the interest rate for the new loan? Is it the same as the existing loans? Higher? If higher, how much higher? The Ford Steel plan does not answer these questions, but if the interest rate is higher than existing senior-secured loans, then that increases the amount of risk to the IRS. Any missed payment after the refinancing closes would result in a higher amount of unpaid interest and a larger secured debt with a lien position senior to the IRS.[6] That would reduce the IRS's collateral position.

The refinancing proposed by Ford Steel increases the amount of risk on the United States without a corresponding benefit to the United States. It is not fair and equitable.

**B.     Sale would not be fair and equitable**

The sale proposed by Ford Steel's plan is likely more lip service than a sincere plan to pursue a sale. First, Ford Steel has been in bankruptcy for more than a year, but it has yet to ask the Court for authority to retain a professional to market the real property for sale. Second, the Ford Steel plan does not propose a sale free and clear of existing liens, and it is unlikely that Ford

---

[6] The United States provides the Court with a discussion of *Sherwood Square Associates* to illustrate the rare time when a court has permitted a debtor to subordinate an existing lien. *Sherwood* is distinguishable, though. The proposed subordination in *Sherwood* was going to increase the value of the collateral by an amount greater than the amount of the new loan. Here, Ford Steel proposes to give the United States no such benefit to correspond with the proposed subordination.

Steel will be able to find a buyer willing to pay any significant amount to purchase real property subject to such extensive liens.

However, in the unlikely event that Ford Steel asserts that its plan proposes a sale free and clear of existing liens, it does not comply with § 1129(b)(2)(A)(ii).  In order to be fair and equitable, the liens of creditors must attach to sale proceeds.  Moreover, the plan provides no real details about the terms of such a sale—*i.e.*, whether it would be for fair market value.

Accordingly, the United States continues to request that the Court deny confirmation of the plans proposed by H.C. Jeffries and Ford Steel and grant the United States such other and further relief as is equitable and just.

Dated:  October 16, 2018.

        Respectfully submitted,

        RYAN K. PATRICK,
        United States Attorney

By:   *s/ Richard A. Kincheloe*
       Richard A. Kincheloe
       Assistant United States Attorney
       Attorney-in-Charge
       United States Attorney's Office
       Southern District of Texas
       Texas Bar No. 24068107
       S.D. Tex. ID No. 1132346
       1000 Louisiana St., Suite 2300
       Houston, Texas 77002
       Telephone: (713) 567-9422
       Facsimile: (713) 718-3033
       Email:  Richard.Kincheloe@usdoj.gov
       **Attorney for the United States of America**

**Certificate of Service**

The undersigned certifies that he served the foregoing Supplemental Objection on the parties receiving ECF notice in this case on October 16, 2018, through the Court's ECF notification system.

                                                             *s/ Richard A. Kincheloe*
                                                           Richard A. Kincheloe
                                                           Assistant United States Attorney